IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JASON M. BROWNING, M.D.,**

    **Plaintiff,**

v.                                                                                        Case No. 5:21-cv-237-AW-MJF

**BAY RADIOLOGY ASSOCIATES, P.L.,**
**et al.,**

    **Defendants.**

_____/

## **FINAL ORDER**

Dr. Jason Browning sued his former employer, Bay Radiology Associates, P.L., and his former partners in the practice (collectively, "Bay Radiology"). ECF No. 1-1. He asserted FMLA interference and retaliation claims, as well as several state-law claims. *Id.* Bay Radiology responded with a breach-of-contract counterclaim. ECF No. 3.

Both sides filed summary judgment motions. ECF Nos. 17, 21. After carefully considering the parties' written and oral arguments, I conclude that Bay Radiology is entitled to summary judgment on the FMLA claims and Browning's breach-of-contract claim. I also conclude that the remaining claims should be remanded to state court.

## I.

A party is entitled to summary judgment if it establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

1

matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021) (quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)).

## II.

The pertinent facts are undisputed. Bay Radiology provides radiology services in the Panama City area. ECF No. 18-1 at 2-3.[1] For many years, it served as the exclusive radiology provider for Gulf Coast Regional Medical Center. *Id.* at 3. Browning worked as a Bay Radiology physician from the time he finished medical school until September 2019, when Bay Radiology terminated him. ECF No. 21-1 ¶ 2.

Hurricane Michael impacted Bay Radiology's operations and financial condition. ECF No. 18-1 at 4-5. By the summer of 2019, Bay Radiology experienced difficulties servicing Gulf Coast because of a staffing shortage. *Id.* Bay Radiology notified Gulf Coast that it would no longer provide radiology services to the hospital.

---

[1] Because this order grants summary judgment in part to Bay Radiology, the following facts are set out in the light most favorable to Browning.

*Id.* Bay Radiology also told its physicians that they were free to discuss joining Envision Physician Services (another radiology practice) after November 1, 2019, which was when Bay Radiology's services with Gulf Coast were to end. ECF No. 18-8 at 23-24. Dr. Lloyd Logue, Bay Radiology's President, coordinated a meeting for Bay Radiology's physicians to meet with Envision. ECF No. 21-1 ¶ 7.

Between July and August 2019, Browning and Logue texted about the status of Bay Radiology's practice. ECF No. 18-5 at 36-58. Logue told Browning that Bay Radiology would "be done" and "People will need to go to other jobs." *Id.* at 38. And Logue told Browning that some of Bay Radiology's other physicians—Dr. Scott Ramey and Dr. Robert Bain—were pending hires elsewhere. *Id.* at 51.

In late August 2019, Browning told Logue that he (Browning) needed time off to address a medical issue and childcare needs. Logue shared this information with Dan Rushing, Bay Radiology's CEO. *Id.* at 53; ECF No. 21-1 ¶ 8. Browning asked, "We need to have the office approve fmla documents in order to take a day off to care for our children now?" ECF No. 18-5 at 61. Logue responded, "In your circumstances, yes." *Id.*

Rushing informed Browning of his FMLA rights and provided him with FMLA certification paperwork for the leave request. ECF No. 18-1 at 5. Rushing told Browning unapproved leave is considered "job abandonment." ECF No. 18-3

3

at 202; ECF No. 18-5 at 63. Browning then went on FMLA leave. ECF No. 18-1 at 5.

While Browning was on leave, Bay Radiology heard reports—including from Gulf Coast's Director of Radiology—that Browning had agreed to join Envision and to continue providing radiology services at Gulf Coast. *Id.* at 5-6; ECF No. 18-2 ¶ 4. Bay Radiology contacted Browning several times to ask about these reports. ECF No. 18-3 at 235-37. His lawyer responded to the inquiries, stating Browning was "examining all of his options." *Id.* at 246-47. The next day, Logue received a copy of Gulf Coast's shift schedule for the week of September 24. That schedule showed Browning would be working that week for Envision. ECF No. 18-1 at 6; ECF No. 18-2 ¶ 5.

Based on the reports and the schedule—and the fact that Browning never explicitly denied he had accepted a job with Envision—Bay Radiology determined Browning was in violation of his employment contract. The partners voted to terminate Browning immediately for cause. ECF No. 18-1 at 6-7. They did so knowing that Browning had requested FMLA leave. ECF No. 18-6 at 15 (49:23-25); ECF No. 18-7 at 9 (28:2-4), 10 (32:19-23); ECF No. 18-8 at 11 (34:23-25); ECF No. 18-9 at 7 (19:23-20:1).

After Browning's termination, other Bay Radiology physicians, including Ramey, accepted other positions but were not terminated. ECF No. 18-1 at 7-8.

Logue testified that the difference between Browning and Ramey was that Ramey "wasn't asking for time off," while Browning was "dishonest" by staying on FMLA leave and working elsewhere. ECF No. 18-5 at 14 (48:5-23).

Browning started with Envision on September 24. ECF No. 18-3 at 9-10 (25:21-26:25). Browning finalized his agreement after he was fired. ECF No. 21-1 ¶ 11. He paid $28,375 for tail insurance coverage and transferred assets out of Bay Radiology's 401k and profit-sharing plan. *Id.* ¶ 13.

### III.

For the reasons below, Bay Radiology is entitled to summary judgment on Browning's FMLA claims.

### A.

First, Browning has not shown evidence of damages for his FMLA claims. To prevail on an FMLA claim, Browning must show that he was prejudiced by an FMLA violation, which means he must show that he suffered damages. *See Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1245 (11th Cir. 2021). At the hearing, he abandoned any separate FMLA interference claim based on allegations that Bay Radiology "discouraged" him from taking FMLA leave, conceding that there would be no damages for such a claim. That leaves his FMLA interference and retaliation claims based on his termination.

For those claims—termination-based claims—Browning has not shown evidence of damages either. Browning's counsel conceded at the hearing that Browning made more with his new employer than he would have had he stayed at Bay Radiology, so there are no lost-wages damages. And his counsel conceded that switching out of the 401k did not cause economic harm. The only damages still asserted are the cost of tail insurance premiums resulting from his termination.

The problem for Browning is that he did not disclose this type of damages or a calculation for such damages in his initial disclosures. "Rule 26 requires a party to include in its initial discovery disclosures 'a computation of each category of damages claimed' and to supplement those disclosures promptly if they are incomplete or incorrect. *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307 (11th Cir. 2021) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A)). "If a party fails to provide information as required by Rule 26(a) or (e)," then Rule 37 permits the district court to order that "the party is not allowed to use that information unless the failure was substantially justified or harmless." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 37(c)(1)).

Browning claims his initial disclosures were sufficient because he mentioned "contract damages resulting from the termination," ECF No. 18-10 at 6, and his employment contract had a provision regarding the payment of tail insurance premiums if he were fired without cause, *see* ECF No. 18-1 at 21. But the initial

disclosures say nothing about insurance premiums. And even if the boilerplate reference to "contract damages" were enough to identify a *type* of damages, Browning never provided any *calculation* for them, as Rule 26 requires.

Moreover, in his later answers to interrogatories, Browning even listed specific types of damages and accompanying damages calculations that he sought—but not tail insurance premiums. ECF No. 18-11 at 4. He addressed loss of income, salary, and compensation, including the difference between his current salary and his compensation at Bay Radiology in 2018; the difference between his benefits; and his interests in Bay Radiology's property as a member. *Id.* But he made no mention of tail insurance premiums.

Browning has not shown his failure to disclose the tail insurance costs was substantially justified or harmless. He has not shown why he failed to disclose this information or supplement his disclosures in the nearly year-long discovery period. Permitting Browning to disclose this type of damages now—after Bay Radiology spent the last year litigating based on other types of damages, and this court granted multiple extensions during which Bay Radiology could have supplemented the initial disclosures—would prejudice Bay Radiology. Bay Radiology would have no chance to respond to this undisclosed information unless discovery was reopened, and reopening discovery would impose heightened costs on Bay Radiology—further

prejudicing it.² Accordingly, in my discretion, I find that Browning's failure to disclose the tail insurance premiums as a type of damages sought—and his accompanying failure to disclose a damages calculation—warrants exclusion of these damages under Rule 37(c)(1). *Cf. Circuitronix*, 993 F.3d at 1307-08.

**B.**

Next, even if Browning had properly disclosed the alleged tail coverage damages, his FMLA claims would still fail. Browning presents two similar, but distinct, FMLA claims—interference and retaliation—both related to his termination. (As noted above, he abandoned his separate interference claim related to "discouragement.") Browning was on FMLA leave when terminated, and he claims (i) that his termination was retaliation for taking FMLA leave and (ii) that his termination interfered with his taking additional FMLA leave (essentially a failure-to-reinstate claim³). But neither claim can succeed—even if there were damages associated with them.

---

² After the hearing, Browning moved for a discovery extension to supplement the missing damages information. ECF No. 32. Bay Radiology opposed the motion. ECF No. 33. The motion will be denied, as explained in more detail below.

³ Browning does not clearly frame this claim as a failure to reinstate. But he was granted leave—although he was terminated in the middle of it—and to the extent he claims he was entitled to some FMLA benefit he did not receive, he has identified nothing other than continuing with his employment. *Cf. Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1220 (11th Cir. 2021) (noting that an FMLA interference claim requires a showing that the plaintiff "was denied a right to which she was entitled under the FMLA" and that reinstatement is one such right (citation omitted)).

8

First, as to the FMLA retaliation claim, Browning cannot satisfy the *McDonnell Douglas* burden-shifting framework. *See Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215-16, 1219 (11th Cir. 2021) (noting that *McDonnell Douglas* applies to FMLA retaliation claims). I will assume that Browning has shown a prima facie case. (The time between his taking FMLA leave and his termination was "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).) And as Browning's counsel acknowledged at the hearing, Bay Radiology's asserted reason—that it believed Browning had accepted another job but was remaining on FMLA leave—was a legitimate reason. That leaves pretext.

To show pretext, an employee must produce sufficient evidence for "a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)). "[T]he pretext inquiry 'centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head.'" *Todd*, 998 F.3d at 1218 (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)). And "temporal proximity by itself generally cannot prove that an employer's

9

proffered reasons are pretextual." *Id.* at 1219-20 (citing *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (en banc) (collecting cases)).

Beyond temporal proximity, Browning points to no evidence demonstrating pretext. True, he points to Logue's statement that the difference between Browning and Ramey was that the latter "wasn't asking for time off." ECF No. 18-5 at 14 (48:20-23). But the full context of that testimony shows that the difference Logue identified was that Browning was "dishonest" by staying on FMLA leave with Bay Radiology while working elsewhere, *id.* at 14 (48:5-23), and Ramey was not acting dishonestly with respect to his employment at Bay Radiology. Logue expressly testified that "the fact [Browning] was on FMLA leave . . . I don't really care about that." *Id.* 14 (48:12-13). What Logue and Bay Radiology did care about was that Browning was "being dishonest" by "saying he's 100 percent committed to Bay Radiology" but "already sign[ing] on with another company during [his] FMLA request." *Id.* at 14 (48:13-19). Meanwhile, Ramey was not dishonest because "he didn't" sign on with a different company while still working for Bay Radiology, and "he wasn't asking for time off" while working elsewhere. *Id.* at 14 (48:20-23). Even viewing the record in a light most favorable to Browning, there is no reasonable interpretation of Logue's statement to show that Browning's mere using FMLA leave was the real reason for the termination. Without pretext, the FMLA retaliation

claim fails *McDonnell Douglas*, which is an independent reason to grant summary judgment on this claim.[4]

Second, as to the FMLA interference claim, Browning's claim fails for a similar reason. The *McDonnell Douglas* framework does not apply to an FMLA interference claim. *Herren v. La Petite Acad., Inc.*, 820 F. App'x 900, 905 (11th Cir. 2020) (noting that interference claims do not require any showing of motive or intent). But Browning's claim fails because the summary judgment record shows—even viewed in Browning's favor—that Bay Radiology would have terminated him whether or not he went on FMLA leave.

An employer prevails on an FMLA interference claim "if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (quoting *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)). Proof of "a legitimate reason for ending the employment, 'wholly unrelated to the FMLA leave,'" is enough to "reliev[e] the employer of its FMLA

---

[4] Browning argues that he never did work for Envision while on FMLA leave from Bay Radiology. But even if Bay Radiology had a misunderstanding about the sequence, that would not show pretext. Even if an employer is wrong about its legitimate reason, that does not make its decision an unlawful one. *Cf. Gogel*, 967 F.3d at 1148 ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory or retaliatory reason." (cleaned up)).

duty to reinstate an employee whose FMLA leave ends." *Todd*, 998 F.3d at 1220 (quoting *Strickland*, 239 F.3d at 1208). Here, Logue testified that Browning's dishonesty in taking another job while remaining employed at Bay Radiology was the problem—that he took FMLA leave was not. ECF No. 18-5 at 14 (48:5-23). Ramey likewise testified Browning's "breach of contract issue" was why "everybody agreed to sign the termination." ECF No. 18-9 at 7 (18:13-19). Ramey explained that Browning "had secured a job with Envision. And while he was on FMLA leave. And he had been asked what his intentions were and wasn't responding. So there was a breach of contract issue." *Id.* at 7 (18:20-25). That is a reason "wholly unrelated to the FMLA leave."

## IV.

As noted above, Browning has not shown good cause to reopen discovery based on his failure to disclose the damages and calculation during the nearly year-long discovery period that the court permitted. He mentions that discovery "has been a challenge for document production because both parties had property destroyed in Hurricane Michael." ECF No. 32 at 2. But he never explains how that hurricane impacted his ability to disclose documents relating to the purchase of tail insurance in the fall of 2019—nearly one year after the hurricane hit in October 2018. The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*,

133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). There has been no showing of good cause here. Without a showing of good cause, this court will not modify the scheduling order. *See* Fed. R. Civ. P. 16(b)(4).

Moreover, the requested reopening would prejudice Bay Radiology. The discovery period closed, and Bay Radiology fully briefed its and Browning's summary judgment motions and presented argument at the hearing. It would delay final resolution of the case and require additional costs if discovery were reopened now, possibly leading to yet another round of summary judgment briefing. Browning has not shown entitlement to such relief.

## V.

With the FMLA claims resolved, that leaves only state-law claims: each side's breach-of-contract claim, and Browning's document-inspection claim. The court had no original jurisdiction over those state-law claims; jurisdiction was based solely on § 1367 supplemental jurisdiction. The court has discretion whether to decide those claims, but "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors will point toward declining to exercise pendent

jurisdiction." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) (cleaned up).[5]

Here, the balance of factors all point to declining to exercise that jurisdiction, with one exception. The lack of damages that resolves the FMLA claims also resolves Browning's breach-of-contract claim. Browning's counsel acknowledged at the hearing that the damages for his breach-of-contract claim and his FMLA claims were identical. And the court has already determined that Browning has not shown any FMLA damages. So that dooms Browning's contract claim, because Florida law requires damages. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

In an exercise of its discretion, the court will exercise jurisdiction over Browning's breach-of-contract claim. And Bay Radiology is entitled to summary judgment on that claim for lack of damages. The court will not exercise jurisdiction over the remaining state-law claims, which will be remanded.

---

[5] It is not clear that the court would have § 1367 jurisdiction over the document-inspection claim because it is not clear that the claim is "so related to the claims in the action with [the court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). But assuming the court has such jurisdiction, it declines to exercise it.

## CONCLUSION

Bay Radiology's summary judgment motion (ECF No. 17) is GRANTED in part. The clerk will enter judgment that says: "Plaintiff's FMLA claims and Plaintiff's breach-of-contract claim (Counts I, II, & III) were resolved at summary judgment. Those claims are dismissed on the merits. The remaining state-law claims, including all counterclaims, are remanded to state court."

Browning's summary judgment motion (ECF No. 21) is DENIED as to Browning's breach-of-contract claim. It is otherwise not addressed and may be considered by the state judge after remand..

The motion to reopen discovery (ECF No. 32) is DENIED.

The motion for leave to file a reply (ECF No. 34) is DENIED.

The clerk will take the appropriate steps to remand the remaining claims to the Circuit Court for the Fourteenth Judicial Circuit, in and for Bay County, Florida.

The clerk will then close the file.

SO ORDERED on August 1, 2023.

s/ *Allen Winsor*
United States District Judge